UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:04-CR-26 |
| | ) | |
| MATTHEW PATTON NUNLEY | ) | |

**O R D E R**

The criminal matter is before the Court to address the defendant's "Motion for Judgment of Acquittal Notwithstanding the Verdict and New Trial." [Doc. 63]. On October 6, 2004, the defendant was found guilty by a jury of Count 1 of the indictment which charged that on or about November 2, 2003, in the Eastern District of Tennessee, the defendant possessed firearms, that is, destructive devices, specifically pipe bombs, which had not been registered to him in the National Firearms Registration and Transfer Record, and Count 2 of the indictment which charged him with knowingly making unregistered firearms, that is, destructive devices, specifically pipe bombs on or about November 2, 2003, without obtaining an approved application form from the

Secretary of the Treasury or his delegate showing approval to make and register the destructive devices as required by federal law.

At trial, Lowell Adkins, a neighbor of the defendant and a former member of the Kingsport Police Department Bomb Squad, testified that he heard an explosion, saw a cloud of smoke, and saw two individuals run up a hill behind a red and white trailer which was later identified as the residence of the defendant. These individuals then got into a pickup truck and left the area. When he went to the area where the cloud of smoke had been observed, he smelled nitrates and observed a blast seat which contained wires and pieces of fragmented PVC pipe. He also saw wires under the deck lid of a car so he left the area because he thought there might be a second device.

Adkins also stated that Emergency personnel responded to the scene including the Kingsport Police Department Bomb Squad, the fire department, the FBI, and the ATF. He met Officer Parker up behind the trailer, they secured the area, and they checked for other devices. He was involved in the location of another device in the room off the kitchen of the trailer which was another pipe bomb made with PVC pipe with wires running into the pipe. Although there were two explosions at site of the cloud he observed, he only heard one explosion.

Special Agent Greg Moore of the ATF testified that he was the lead

case agent in this case and that he went to the scene on November 2, 2003. When the defendant returned to the scene, after advising the defendant of his rights, the defendant admitted that he had made three (3) pipe bombs that day and had detonated two (2) of them. However, the defendant testified that he believed these devices to be smoke bombs.

Co-defendant William Michael Carter testified and admitted that he and the defendant put together pipe bombs on November 2, 2003. He stated that it was his idea to put one in a hole, and that it was Matthew Nunley's idea to put one in a metal tool box and to place the tool box in a shed. They first ignited the one in the hole, but when they ignited the one in the tool box, Carter testified that he got out of the way because that bomb was too big for him. When the one in the tool box went off, it was so loud they were surprised.

Lori Krupa, who is employed as a forensic chemist by the ATF, testified that she examined the device found in the trailer and the remains of the two devices that had been exploded. During her analysis, she found pyrodex, which is a black powder substitute. She also found the remains of an Estes brand model rocket ignitor in connection with the device found in the trailer.

An Explosive Enforcement Officer with the ATF, Alex Guerra, also testified that he evaluated Ms. Krupa's analysis and that the three (3) improvised

explosive devices would ignite when electricity was sent to the rocket ignitor. He stated that the devices were explosive bombs which could cause serious injury or death due to the shrapnel from the pipe which would fragment.

**MOTION FOR JUDGEMENT OF ACQUITTAL**

The defendant contends that the admission of a National Firearms Registration and Transfer Record Search Certificate, ("ATF certificate"), to establish essential elements in regard to both Count 1 and Count 2, violated his constitutional rights under the Confrontation Clause. This ATF certificate which is in the form of an affidavit provided as follows:

> . . . . . . . "I further certify that, after diligent search of the said Record, I found no evidence that the firearms described below are registered to, or have been acquired by lawful manfacture, importation, or making by or transfer to MATTHEW PATTON NUNLEY" . . . .

This evidence was offered to prove:

(1) In regard to Count 1, that the firearms were not registered to the defendant in the National Firearms Registration and Transfer Record; and

(2) In regard to Count 2, that prior to the making of the destructive device, the defendant failed to obtain an approved application form from the Secretary of

4

the Treasury or his delegate showing approval to make and register the destructive devices as required by federal law.

In it's response to the defendant's motion, the government asserts that the ATF certificate fully complies with the strictures of Rules 803(10) and 902(2) of the Federal Rules of Evidence. The government correctly notes that Rule 803(10) allows hearsay evidence to prove the absence of a record, report, statement or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, which is accompanied by a certification in accordance with Rule 902 that a diligent search failed to disclose the record, report, statement, or data compilation. The ATF certificate filed by the government also complied with the provisions of Rule 902(1) because it was a document bearing a seal purporting to be that of a United States governmental entity. However, even if this evidence was erroneously admitted by the Court, it may be properly considered by the Court in determining the sufficiency of the evidence in regard to a motion for judgment of acquittal even though the evidence would have otherwise been insufficient to support a judgment of conviction. *Lockhart v. Nelson*, 488 U.S. 33, 34 (1988).

Therefore, the evidence in this record is sufficient to establish the

firearms in question, i.e. pipebombs, were not registered to the defendant in the National Firearms Registration and Transfer Record, and that the defendant failed to obtain an approved application form from the Secretary of the Treasury or his delegate showing approval to make and register the destructive devices as required by federal law even though the evidence establishing these essential elements may have been erroneously admitted. Accordingly, it is hereby **ORDERED** that the defendant's motion for judgment of acquittal is **DENIED**.

## **MOTION FOR A NEW TRIAL**

The government's position is this case is exactly the position that the government took in *United States v. Robinson*, 389 F.3d 582, 592-593 (6th Cir. 2004), which involved the prosecution of a robbery of subsidiary branch of bank insured by Federal Deposit Insurance Corporation (FDIC). In *Robinson*, the Sixth Circuit found that the affidavit/ certificate of the Assistant Executive Secretary of the FDIC was admissible under the hearsay exception as to the insured status of the bank and its branches, and as to the fact that, despite a diligent search, no evidence was found that bank's FDIC-insured status had been revoked. The affidavit/certificate was found to be a document offered to prove the nonexistence of a matter of which a record was regularly made and preserved by a public office or agency, and which bore the seal of the FDIC.

6

However, in *Robinson*, the Sixth Circuit declined to reach the question of whether the admission of the FDIC certificate violated Robinson's rights under the Confrontation Clause, because any such error was harmless beyond a reasonable doubt because the jury had been presented with other testimony by the assistant vice-president of the bank regarding the status of the bank as FDIC-insured. Therefore, the Sixth Circuit did not address whether a statement admitted under Fed.R.Evid. 813(10) was "testimonial" under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Robinson* at 593.

The government notes that the co-defendant in this case testified that no attempt was made to lawfully register or receive permission to manufacture destructive devices. However, there was no evidence that this co-defendant had first-hand knowledge in regard to the contents of the National Firearms Registration and Transfer Records.

Although the government classifies the ATF certificate in this case as a "business record," the Court FINDS that the document dated June 16, 2004, was undoubtedly created for trial purposes to establish an essential element of the offense, and its introduction permitted the government to avoid having a record-keeper actually testify. If the record-keeper had testified, the defendant

7

would have had the opportunity to cross-examine that person in regard to facts and circumstances surrounding the search of National Firearms Registration and Transfer Records.

In *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004), the Sixth Circuit held that the proper inquiry to determine if a statement is testimonial is whether the declarant intends to bear testimony against the accused, and that intent may be determined by querying whether a reasonable person in the declarant's position would anticipate that his statement would be used against the accused in investigating and prosecuting the crime. In this case, the officer/declarant who signed the ATF certificate, which was prepared for use at trial, obviously could have anticipated that his statement would be used against the defendant in prosecuting the crime.

Therefore, the Court FINDS that the admission of the ATF certificate, which was used to establish an essential element of the crimes charged in the indictment, violated the defendant's rights under the Confrontation Clause. This conclusion "implies nothing with respect to the guilt or innocence of the defendant," but is simply "a determination that [he] has been convicted through a judicial process which is defective in some fundamental respect." *Burks v. United States*, 437 U.S. 1, 15 (1978); *United States v. Quinn*, 901 F.2d 522, 531, 30 Fed.

8

Case 2:04-cr-00026-JRG   Document 69   Filed 01/14/05   Page 8 of 9   PageID #: 153

R. Evid. Serv. 215 (6th Cir. 1990)

Accordingly, it is hereby **ORDERED** that the defendant's motion for new trial is **GRANTED**, that his sentencing set for January 24, 2005 is **CANCELLED**, and that a status conference will be held on January 24, 2005 to set this case for trial.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE

9